IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDMOND BELONEY,<br><br>    Petitioner,<br><br>  v.<br><br>ANTHONY HEDGPETH, Warden,<br><br>    Respondent.<br>_____/ | No. C 07-4327 WHA (PR)<br><br>**DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has not filed a traverse. For the reasons set forth below, the petition is **DENIED**.

**STATEMENT**

Petitioner Edmond Beloney and his twin brother Edwin, together with co-defendant Avery Darbey, were convicted after jury trial of two counts of robbery in an inhabited dwelling while acting in concert. *See* Cal. Penal Code § 213(a)(1)(A). The jury found true the allegation that the crimes was committed for the benefit of a criminal street gang. *See* Cal. Penal Code 186.22(b)(4). Petitioner was sentenced to state prison for fifteen years to life. *People v. Beloney*, 2006 WL 3813676, *1 (Cal. App. 2006).

///

**DISCUSSION**

**A.   STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082,

1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do.  *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, which in this case is that of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**B.    ISSUES PRESENTED**

As grounds for federal habeas relief, petitioner asserts that: (1) there was insufficient evidence to support the gang enhancement; (2) his sentence was cruel and unusual; and (3) his Fifth, Sixth and Fourteenth Amendment rights were violated when the trial court gave a defective jury instruction.

The following background facts, describing the crime itself, are taken from the opinion of the California Court of Appeal. The facts relevant to the issues are set out in the discussion of each, below.

> Around 5:30 a.m. on March 22, 2004, Carrie Riddell and Gary Newell were asleep in their San Jose apartment when Riddell was wakened by the sound of a loud bang. She opened her eyes and saw twins Edmond and Edwin running into her bedroom. Riddell tried to run but the twin who was wearing a blue Pendleton shirt grabbed her and punched her in the stomach. When she fell to her knees he grabbed her by her hair and threw her face onto the bed. At the same time, the other twin punched Newell and then hit him in the face with a flower pot.
>
> The twins were yelling for money or "weed." Riddell thought that the twins wanted marijuana because Newell was a cannabis patient, he was known to have quantities of marijuana in the apartment, and he had sold marijuana in the past to his friends. Newell ran into the living room holding a knife that he retrieved from his headboard. He was followed by the twins. Newell received a laceration on his jaw from somebody hitting him with his own machete, which had been behind the front door. When Riddell got to the living room she saw Avery standing by the front door holding Newell's machete. Defendants had

3

broken down the locked front door in order to enter the apartment. Newell told the defendants that they had marijuana in the trunk of Riddell's car. Because she was afraid and thought that if she gave the defendants something they would leave, Riddell grabbed her key ring from a hook on the wall and gave it to Edmond.

Edmond and Avery ran out of the apartment with the keys and the machete. Edwin stood over Newell and hit him in the face with a speaker. Newell was sitting on the couch, bleeding from his face and his arms. When Riddell stood in front of Newell, Edwin put down the speaker and punched her in the face, causing a black eye. He then left.

(Exh. H at 2-3)

### 1. SUFFICIENCY OF EVIDENCE

Petitioner contends that there was not sufficient evidence to support the gang enhancement. The testimony on that issue was set out by the court of appeal:

Officer Tamara Sass testified as an expert on African-American criminal street gangs. She testified that the Crips gangs came to San Jose from Los Angeles in 1985, settled in the Seven Trees apartment complex, and claimed that turf. As the years went by, pockets of the gang settled elsewhere. Although the various San Jose Crips gangs use different names, such as Seven Trees Crips, 408 Crips, and Dark Side Mob, they are one and the same gang. Members of Crips gangs identify with the color blue, but they do not always wear blue.

There are 20 validated Seven Trees Crips gang members in San Jose and 50 total members, including one in Modesto. In Officer Sass's opinion, the Seven Trees Crips is an ongoing criminal street gang, the primary activities of which are robbery, assault with a deadly weapon, witness intimidation, criminal threats, homicide, possession of drugs for sale, and carjacking. She based her opinions on the following incidents.

Peter Hodges, Marco Duncan and Shaun Thomas, who were all Seven Trees Crips gang members, pushed their way into an apartment in order to rob the victim while wearing blue clothing on December 1, 1992. One of the gang members had a gun, but the victim was able to get it away from him. The victim's girlfriend grabbed another gun and she and the victim shot at the gang members, scaring them away. On February 1, 1995, Dark Side Mob gang members put a gun to a victim's head and accused him of stealing a gun from them. The gang members, joined by defendants Edmond and Edwin, took the victim to a nearby high school. There, while Edmond held a gun on the victim, the gang members robbed the victim of $ 400. On August 12, 1997, Cedric Chambers, Kevin Mack, Johntae Hodges, and Javis Anthony, who were all Seven Trees Crips gang members, were stopped by the police for a vehicle code violation. Cedric Chambers, the driver, was under the influence of alcohol. Kevin Mack was found to possess 22 baggies of cocaine and a .22 caliber handgun. Johntae Hodges and Javis Anthony had large amounts of cash in small denominations. A blue bandana was found inside the car. A homicide occurred on August 25, 1997, in known Seven Trees gang turf. The victim was someone from out of town who came to San Jose frequently to sell drugs in that area. Johntae Hodges and Cedric Chambers shot at the victim after the victim

4

threatened them with a pipe.

///

On February 19, 2000, Derrick Gaines, an admitted Seven Trees Crips gang member who has gang tattoos, and Shaun Rogers shot two victims and a bystander after not being allowed into a party. When Gaines was located at home after the shooting, a great deal of gang clothing and other gang indicia including graffiti were found in the home. Peter Hodges, an admitted Seven Trees Crips gang member, and others beat a victim at a convenience store on May 28, 2000. As they left, they yelled out "Seven Trees." On December 28, 2000, Cedric Chambers demanded $50 from a woman who he thought owed him money. When the victim refused to pay him, Chambers punched her in the face. The victim's daughter, who had previously dated another person who was there with Chambers, wanted to pay the money. The other person told the daughter to stay out of it because it was " 'Seven Trees Crip business.' " The daughter paid the money and Chambers and the other person left with the money. A week and a half later, when the victim demanded that the other person return her daughter's possessions, the person threatened the victim in words the victim took to be a death threat.

On February 16, 2002, a minor reported that Richard Knight and Rodney McNary, both Seven Trees Crips gang members, went to the minor's home, where they robbed him at gunpoint, taking his jewelry and some marijuana that had been packaged for sale. The minor had "disrespected" the two gang members previously. Keyvan Dancy, a 408 Crips gang member, committed a carjacking at gunpoint with another person in Modesto on April 14, 2002. When the suspects were apprehended they were wearing blue clothing. On June 16, 2003, Tonato Mills, who admitted being a Seven Trees Crips gang member upon his arrest, assaulted an A.P.G. gang member at a high school. On September 26, 2003, Adrian Hill, an admitted Seven Trees Crips gang member, threatened to shoot a white male who had previously been affiliated with the gang, because the man wanted out of the gang. On January 18, 2004, a robbery occurred wherein the victim was approached by a black male who punched him in the face then stole his wallet and cell phone. As the black male drove away with another person, the two yelled " 'Seven Trees.' " On March 28, 2004, during a car stop, Richard Knight told officers that he was a member of the Seven Trees Crips. Knight had the number seven and a tree tattooed on his stomach.

Around 10:45 p.m. on March 21, 2004, the night before the incident at Newell and Riddell's apartment, defendants Avery and Edwin, and Thomas Hall were involved in a carjacking. Two of them made the victims get on their knees, and then went through the victims' pockets. The victims thought that the suspects had guns, and one of the victims heard one of the suspects threatened to " 'blow him.' " The car was stripped and dumped.

On April 10, 2004, Dante Watts, who was wearing a blue beanie and a blue jacket, told officers that he was a Seven Trees Crips. Dante Watts had "S.T." tattooed on his right arm. On April 19, 2004, Deon Watts, who was wearing a blue shirt, was photographed during a car stop flashing a Seven Trees gang hand sign, which is used by gang members to identify themselves. On May 4, 2004, Richard Knight and Deon Watts were together during a car stop. Knight told officers that he was a member of Seven Trees Crips, and Deon Watts, who was wearing a blue shirt and blue jeans, also claimed to be a member of the Seven Trees Crips. Watts had "seven" tattooed on his left arm, "trees" tattooed on his right arm, and "crip" tattooed on his lower back. On September 15, 2004, a man

bragged to a friend that he had just beaten up a Seven Trees Crips gang member during a fight. Later that evening Richard Knight returned to the location of the fight with a baseball bat and several other gang members and assaulted the man. On February 8, 2005, there was a Crips gang-related assault with a deadly weapon and a brandishi

Officer Sass testified that, in her opinion, Edwin is a member of the Seven Trees Crips gang. Her opinion is based on information received from other gang officers in reports and field identification cards, as well as Edwin's tattoos and admissions to officers involved in this case. Edwin has "7" tattooed on the back of his left arm, and "seven trees" tattooed on the back of his right arm. On May 18, 1998, officers responded to the report of a gang fight in known Seven Trees Crips turf in downtown San Jose. When officers contacted Edwin, he flashed them a Seven Trees Crips gang sign. Edwin was with Alvin Hill, a validated Seven Trees Crips member, and had a box cutter in his pocket. On August 24, 1998, Edwin was arrested for selling cocaine to an undercover officer in known Seven Trees gang turf in downtown San Jose. On December 8, 1998, Edwin was arrested for being drunk in public in the same area while wearing a blue Dallas Cowboys jacket and a buckle with an "S" on it, and while having Seven Trees tattoos on his arms. On March 12, 1999, Edwin was with defendant Avery when officers found that he possessed a concealed weapon in the same known Seven Trees turf. On May 15, 1999, Edwin was again arrested for selling cocaine in same area of downtown San Jose.

Officer Sass also testified that, in her opinion, Edmond is a member of Seven Trees Crips. Her opinion is based on information from other officers, police reports and field interview cards, and Edmond's tattoos and admissions to Detective Mitchell. Edmond has a "408" tattoo on one arm, "7" tattooed on the back of his left arm, "trees" tattooed on the back of his right arm, and "7 trees" tattooed in the middle of his back. There was a Crips gang fight involving guns on April 1, 1996. During an investigation of the fight, Edmond was found in a room with several Seven Trees Crips members. On July 27, 1996, Edmond committed an assault with Andre Smith, a validated 408 Crips gang member. On January 7, 1997, Edmond was with a Crips gang member when he was found by officers to be in possession of cocaine. On March 11, 1998, Edmond was arrested for selling cocaine to an undercover officer in the same downtown San Jose area where Edwin was arrested. On August 24, 1998, the same day that Edwin was arrested for selling cocaine to an undercover officer, Edmond was seen by officers hanging out in the same area while wearing blue clothing.

Officer Sass also testified that in her opinion defendant Avery is a member of the Seven Trees Crips gang. Her opinion is based on information from other officers and in police reports and field identification cards. Avery has a "scar, almost a carving of 'B.K.' " on his left chest. Some Crips gang members call themselves B.K., which stands for Blood Killer, as Bloods gangs are rivals of Crips gangs. On April 26, 1993, Avery was wearing blue clothing when he was arrested for breaking into a car and attempting to steal its stereo in Seven Trees gang turf. On December 6, 1994, Avery committed an assault with a deadly weapon with Johnny Eagles, an admitted Crips gang member, in Seven Trees turf. On January 13, 1996, Avery was arrested for a robbery that occurred one block away from Seven Trees turf. On June 1, 1998, Avery was with Desiree Morris, a documented Crips gang member, when he was arrested in downtown San Jose in Seven Trees turf for possessing cocaine for sale. On December 20, 1998, Avery was found to be under the influence of a stimulant while wearing blue shoes in the downtown San Jose Seven Trees turf. When contacted by police in the same area on February 2, 1999, Avery had a small bat concealed under his jacket. On

6

> March 27, 1999, Avery was cited for possessing less than one ounce of marijuana in the same area. On April 18, 1999, while wearing a blue shirt, Avery assaulted three victims who accidentally bumped into him outside a nightclub in the same area. Avery admitted to San Bernardino county jail personnel on November 28, 2001, that he was a member of Seven Trees Crips in San Jose. Avery committed the carjacking with Edwin prior to the incident at Newell's apartment, and committed the robberies of Newell and Riddell with Edwin and Edmond.
>
> Officer Sass further testified that in her opinion the robberies of Newell and Riddell were gang-related due to the admissions of membership in Seven Trees to Officer Mitchell and Lieutenant Ryan, the defendants' gang tattoos, the participation by three gang members in the robberies, the fact that the victims knew the robbers to be Seven Trees Crips gang members and specifically reported the robberies as having been committed by Seven Trees Crips gang members, and the fact that the robberies occurred shortly after Newell had beaten up Avery in front of some friends. In Sass's opinion, Avery and the others went back to Newell's to save face, to retaliate, to get back the respect that was lost after the prior incident, "because when you disrespect one gang member, you disrespect the whole gang." "It's sending a message to the people that Seven Trees is not to be messed with, it helps them build their power and later to help in recruiting." In addition, any money or drugs taken would be used for the benefit of the gang.

(Exh. H at 8-11)

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim. *Jackson v. Virginia*, 443 U.S. 307, 321 (1979).

A federal habeas court applies the standards of *Jackson* with an additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of *Jackson* and *Winship* to the facts of the case. *Id.* at 1275 (quoting 28 U.S.C. 2254(d)). Section 2254(d)(1) plainly applies to *Jackson* cases; that is, if the state court affirms a conviction under *Jackson*, the federal court must decide whether the state court's application of *Jackson* was objectively unreasonable. *Sarausad v. Porter*, 479 F.3d 671, 6777-78 (9th Cir. 2007).

1  The court of appeal explained the gang enhancement at issue here:

2  [The statute] imposes punishment of life imprisonment with a minimum term of 15 years when a defendant is convicted of "a home invasion robbery" in violation of section 213, subdivision (a)(1)(A), "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b).) The essential elements of an allegation under this subdivision are: (1) the crimes charged, in this case home invasion robberies, were committed for the benefit of, at the direction of, or in association with a criminal street gang; and (2) these crimes were committed with the specific intent to promote, further, or assist in any criminal conduct by gang members.

8  (Exh. H at 13-14)

9  Petitioner does not deny he is a member of the Seven Trees Crips, but contends there is insufficient evidence on the two elements set out above (Pet., Exh. C at 8). As to the first element, aside from the testimony of expert Sass, which would be sufficient in itself, the crime was committed with two other Seven Trees Crips members, which is evidence going to the "in association with any criminal street gang," part of the element, and officer Sass testified that the crime tended to promote the gang – that is, benefit it – by enhancing respect for it and enhancing its reputation. There thus was substantial evidence as to the first element.

As to the second element, the court of appeal held that in proving the elements of the enhancement the prosecution did not have to prove that "the defendants, in committing the home invasion robberies, intended to assist in criminal conduct by gang members other than the robberies themselves." (Exh. H at 16) A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Thus, although the United States Court of Appeals for the Ninth Circuit interpreted California law on this point to the contrary in *Garcia v. Carey*, 395 F.3d 1099, 1101-02 (9th Cir. 2005), this Court is bound as to the state law question by the determination of the California court in this case. And even if the court of appeal's holding were not binding, in this case there was expert testimony of the sort the Ninth Circuit said in *Garcia* would be substantial evidence on the second element. *See id.* at 1104.

Since it is clear that petitioner here intended to promote, further or assist the criminal conduct by his fellow gang members, and because the testimony by officer Sass also supports

8

this element with regard to crimes other than the present one, there was substantial evidence as to the second element.

For these reasons, the rejections of these claims by the state appellate courts were not contrary to, or unreasonable applications of, clearly-established United States Supreme Court authority.

### 2. EIGHTH AMENDMENT CLAIM

Petitioner contends that his sentence of fifteen years to life was cruel and unusual, a violation of the Eighth Amendment. Respondent contends that the claim is procedurally barred and also without merit.

#### a. Procedural Bar

It is undisputed that petitioner did not raise this issue at the time of sentencing. Respondent contends that it therefore is procedurally barred. California's contemporaneous objection rule, which provides that objections are waived if not made at the earliest practicable time, is recognized by the Ninth Circuit as a valid procedural bar. *See Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004); *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999). Here, however, the court of appeals did not rely on the bar, but instead said that despite the failure to object, "we will consider the issue due to Edmund's claim of ineffective assistance of counsel." (Exh. H. at 31-32) This claim is not barred. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802-03 (1991) (if state court does not rely on potential procedural bar but instead considers federal claim on merits, there is of course no procedural default, and federal court may consider claim).

#### b. Merits

In *Ewing v. California*, 538 U.S. 11 (2003), and *Lockyer v. Andrade*, 538 U.S. 63 (2003), the United States Supreme Court considered the question of when a sentence is so disproportionate that it violates the Eighth Amendment. In *Andrade*, a habeas case, the Court held that the "only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case."

9

1  *Id.* at 73 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)).  The Court also made
2  clear that the offense to which gross disproportionality review should be applied should not be
3  defined in terms of just the offense of which petitioner was convicted, but that a prisoner's
4  record of recidivism is to be considered.  *Ewing*, 538 U.S. at 29.

5       A comparison of petitioner's case to both *Ewing* and *Andrade* reveals the inadequacy of
6  his claim.  In *Ewing*, the Supreme Court upheld a sentence of twenty-five years to life, pursuant
7  to California's "three-strikes" law, against a recidivist prisoner convicted of grand theft.  *Ewing*,
8  538 U.S. at 30-31.  In *Andrade* the Supreme Court upheld a sentence of two consecutive terms
9  of twenty-five years to life, pursuant to California's "three-strikes" law, where the defendant
10 was convicted of two counts of petty theft.  *Andrade*, 538 U.S. at 76.  In both *Ewing* and
11 *Andrade* the prisoners had lengthy criminal records and their triggering offenses were
12 "wobblers", meaning the charges could have been classified as either felonies or misdemeanors
13 at the discretion of the prosecutor or trial judge.  *Andrade*, 538 U.S. at 66-67; *Ewing*, 538 U.S.
14 at 16-19.  Here petitioner's criminal record is arguably not as serious, as he had no serious
15 felony convictions, but his present offense was much more serious.

16      Petitioner has eight prior misdemeanor convictions, one of which was for inflicting
17 corporal injury on a cohabitant and two of which were for battery (Exh. at 30).  He had been
18 granted probation on two different dates on a total of five of the convictions, but had failed to
19 comply with the probation conditions, resulting in probation being revoked and bench warrants
20 issued about two weeks before the present offense (*ibid.*).  And of course the crime was gang-
21 related, something that the California legislature obviously considered to be a serious
22 aggravating factor.  Unlike the convictions in *Ewing* and *Andrade*, petitioner's triggering
23 conviction, home invasion robbery for the benefit of a gang, is extremely serious.  Thus,
24 although the sentence here is severe, it is not grossly disproportionate to the offense.

25      The sentence did not violate the Eighth Amendment.

26      **3.**    **JURY INSTRUCTION**

27      Petitioner contends that the trial court violated his due process rights by failing to sua
28 sponte instruct the jury on the meaning of the phrase "in association with any criminal street

gang" in the statute. *See* Cal Penal Code 186.22(b) (home invasion robbery committed "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members."). He contends that the court should have instructed the jury that "[a] crime is committed in association with a crimianl street gang when there is a relationship between the crime and the gang." (Exh. H at 20)

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *Estelle v. McGuire*, 502 U.S. at 72. The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Id*. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982). Finally, the defined category of infractions that violate fundamental fairness is very narrow: "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Estelle*, 502 U.S. at 73.

The court of appeal held that the instruction for which petitioner argues is not a correct statement of California law (i*bid.*). That holding is binding on this Court. *See Bradshaw*, 546 U.S. at 76. The trial court's failure to give an erroneous instruction could not have violated due process. *See Clark v. Brown*, 450 F.3d 898, 904-05 (9th Cir.2006) (failure to instruct on the theory of defense violates due process only if, among other things, the "'the theory is legally sound . . . .'") (quoting *Beardslee v. Woodford*, 358 F.3d 560, 577 (9th Cir. 2004)). The rejections of this claim by the state appellate courts was not contrary to, or an unreasonable application of, clearly-established United States Supreme Court authority.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April ___3___, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.07\beloney327.RUL.wpd